UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SIYUNG LIU,** *et al.*,<br><br>    Applicants,<br><br>  v.<br><br>**ALEJANDRO MAYORKAS,** *in his official capacity as United States Secretary of Homeland Security*, *et al.*,<br><br>    Defendants. | Case No. 1:21-cv-1725 (TNM) |

### MEMORANDUM ORDER

  Employers in the United States can bring foreign nationals into the country as employees under the H-1B visa program. Until 2019, the Citizenship and Immigration Services (USCIS) conducted an annual lottery by randomly selecting petitions filed by employers to fill the number of H1-B visa slots allocated for the year. In 2019, USCIS changed the process. Employers now must file registrations on behalf of foreign nationals they want to hire. When USCIS selects a registration in the lottery, the employers can submit a petition on behalf of the alien associated with the selected registration.

  Plaintiffs in this immigration case are H1-B visa applicants whose registrations were not selected in any of the three lotteries conducted this year (collectively, the Applicants). The Applicants allege that at least some were not selected because the regulations promulgated in 2019 (the Registration Rules) made it easier for so-called "H1-B consultancies" to submit fraudulent registrations on behalf of foreign nationals. If USCIS selects a fake registration, the foreign national simply finds a new employer, with no impact on his H1-B visa. The upshot, the Applicants allege, is that some foreign nationals have multiple registrations in the lottery, thus reducing the odds of selection for law-abiding individuals like themselves. The Applicants seek

a declaration that the Registration Rules are unlawful and ask the Court to order USCIS, its parent agency—the Department of Homeland Security—and its Secretary (collectively, the Department) to conduct future lotteries in a lawful manner. The Department moves to dismiss, contending that Applicants lack standing, that their claim is moot, and that they do not challenge a final agency action. The Court finds that the Applicants have standing, that they bring a live controversy, and that they challenge a final agency action. It therefore denies the motion.

I.

To establish standing, the Applicants must allege: (1) that they have suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the Department; and (3) that a favorable decision is likely to redress the identified harm. *See Sabre, Inc. v. DOT*, 429 F.3d 1113, 1117 (D.C. Cir. 2005). Because the injury the Applicants allege is an increased risk of harm—that is, the Registration Rules reduce their odds of being selected in the lottery, *see* Second Am. Compl. (Compl.) ¶ 36, ECF No. 11—they must show that the threatened future injury is "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be *certainly impending* to constitute injury in fact . . . allegations of *possible* future injury are not sufficient.") (cleaned up).

*First*, injury in fact. Echoing the *Clapper* standard, the Department argues that "the court has jurisdiction only if 'the plaintiff can show both (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss (Defs.' Mem.) at 27, ECF No. 21-1 (quoting *Food &*

*Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015)).[1]  The Applicants do not meet this standard, the Department contends, because "none alleges that their potential employers still intend to hire them as an H1-B temporary worker."  Defs.' Mem. at 27.  And without a showing that these potential employers intend to hire the Applicants, the Applicants might never get another chance to participate in the lottery.[2]  More, even if *some* Applicants meet the *Clapper* standard, the Department argues that *all* the Applicants do not.  This matters because the Applicants cannot establish standing "merely by aggregating the allegations of different kinds of plaintiffs, each of whom may have claims that are remote or speculative taken by themselves."  *Pub. Citizen, Inc. v. NHTSA.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007) (cleaned up).

The Applicants' allegations overcome each of the Department's arguments.  They contend that registrations increased by 12% this fiscal year and that the Department selected 28% of the registrations this year compared to 45% last year.[3]  Compl. ¶ 63.  The Department does not define "substantial"; in common usage, it means "[c]onsiderable in extent, amount, or value."

---

[1]  All page number citations to documents on the docket refer to the pagination generated by the Court's CM/ECF system.

[2]  Of course, the Applicants might not have been selected in any of the lotteries conducted so far this year because of the Registration Rules.  But a past injury is not sufficient for standing.  *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  Thus, to show that their risk of harm and probability of harm have spiked, the Applicants must face the prospect of not being selected in another lottery—if not this year, then in the next fiscal year.

[3]  Since the initial lottery, the Department has run two more lotteries.  *See* Defs.' Notice of Admin. Action at 1, ECF No. 24.  So at this point, the Department has selected more than 28% of total registrations.  But because a court evaluates standing when the Complaint was filed, *see Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 570 n.4 (1992), and because the Department conducted the other lotteries after the Complaint was filed, the Court will not consider them in evaluating whether the Applicants prove injury in fact.  *Compare* Compl. (filed on July 13, 2021), *with H-1B Electronic Registration Process*, USCIS (last updated Nov. 19, 2021), https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations-and-fashion-models/h-1b-electronic-registration-process (stating the Department conducted the second lottery on July 29, 2021 and the third lottery on November 19, 2021).

*Substantial*, Black's Law Dictionary (11th ed. 2019).  If the Court credits the Applicants' allegations, as it must, *see Ord v. District of Columbia.*, 587 F.3d 1136, 1140 (D.C. Cir. 2009), a change from 45% to 28% is substantial.  Each individual Applicant had a bona fide job offer when the Complaint was filed and participated in the lottery, *see* Compl. ¶ 3, so each Applicant faced this reduction in the odds of being selected in the lottery.  The Applicants are therefore not merely aggregating individually insufficient claims to collectively achieve standing.

      The Department argues that having a bona fide job offer at the time of the Complaint is inadequate and that the Applicants must show their employers still want to hire them.  *See* Defs.' Mem. at 25.  But the Applicants need now only show that they possessed standing as of the date they filed the Complaint.  *See Defenders of the Wildlife*, 504 U.S. at 570 n.4.  Because they had job offers at the time of the Complaint, and had entered the lottery, they have shown what they need to for injury in fact.

      *Second*, traceability.  The Department contends that the purportedly false registrations filed by third parties are the cause of the Applicants' harm.  *See* Defs.' Mem. at 30–31.  And when third parties contribute to a plaintiff's harm, it must be "substantially probable that the challenged acts of the defendant, not some third party," led to the plaintiff's injury.  *Id.* (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996)).  "But Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries; it requires only that those injuries be fairly traceable to the defendant." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) (cleaned up).  When third parties play a causal role, the Circuit "require[s] substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress."  *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (cleaned up).  Here,

the Applicants have provided substantial evidence: their odds of selection dropped from 45% to 28% because of the Registration Rules.  That constitutes "substantial evidence of a causal relationship," so the Applicants have proven traceability.

*Third*, redressability.  "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff."  *Fla. Audubon Soc.*, 94 F.3d at 663–64.  The Department argues that fraud prevention measures already exist and "stand to deter the fraud Plaintiffs' fear."  *See* Defs.' Mem. at 31–33.  But if the Court credits the Applicants' claims, as it must, *see Ord*, 587 F.3d at 1140, the decrease in the probability of selection in the lottery shows that these measures, if they work at all, are ineffective.  And the relief the Applicants seek would redress their injuries because the probability of selection would increase with the fraudulent registrations removed.  Thus, the Applicants have shown redressability.

## II.

The Department contends that the Applicants' case is moot because none of them "provided evidence of a company that plans to file a registration for them in any future H1-B cap-selection process."  Defs.' Mem. at 34.  But as discussed above, each individual Plaintiff had a bona fide job offer when the Complaint was filed.  *See* Compl. ¶ 3.  To buttress their position, the Applicants submitted an affidavit from one of the Applicants' employers, KMD Partners, LLC, confirming it still intends to employ Plaintiff Jiaqi Xu.  *See* Aff. of KMD Partners, LLC, ECF No. 22-1.

The Department argues that the Court cannot consider this affidavit because "standing must be determined as of the time a suit commences."  Defs.' Reply in Supp. of Mot. to Dismiss (Defs.' Reply) at 7 n.1, ECF No. 23.  But the Department is confusing standing with mootness.

For standing, a plaintiff must show injury in fact, traceability, and redressability as of the time the Complaint was filed.  *See Defenders of the Wildlife*, 504 U.S. at 570 n.4.  A live case or controversy, on the other hand, must persist *throughout* the adjudication of the case.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("It is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit.  There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (cleaned up).  Without reference to events postdating the Complaint, there would be no way to determine whether a live case or controversy exists.

The Court finds that the Applicants bring a live controversy.[4]

### III.

The Department argues that the Applicants' second cause of action—which alleges that the Registration Rules are arbitrary and capricious and therefore violate the Administrative Procedure Act (APA)—does not challenge a final agency action.  Defs.' Mem. at 37.  "[A]n ongoing program or policy is not, in itself, a final agency action under the APA, [and] a court's jurisdiction does not extend to reviewing generalized complaints about agency behavior."

---

[4] Even if the Applicants' claims were moot, they would likely qualify for the "capable of repetition, yet evading review" exception.  This exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010).  The D.C. Circuit has held that "orders of less than two years' duration ordinarily evade review." *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996).  As the Department itself admits, the H-1B "season" runs annually from April 1 to October 1.  *See* Defs.' Mem. at 15.  And the Applicants meet the second prong because "for many [of them], the H1-B program is their only option to live and work in the United States."  Pls.' Opp'n to Defs.' Mot. to Dismiss at 25, ECF No. 22.  It is therefore "reasonable to expect that Plaintiffs will seek H1-B employment in the future." *Id.* at 24.

*Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006). "Under the terms of the APA, [the Applicants] must direct [their] attack against some particular agency action that causes [them] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). The Department argues that the Applicants bring a "programmatic attack precluded by *National Wildlife Federation*." Defs.' Mem. at 39.

But this case is not like *National Wildlife Federation*. There, the Federation challenged the Bureau of Land Management's (BLM) "land withdrawal review program." *Nat'l Wildlife Fed'n*, 497 U.S. 871 at 875. In denying the Federation's challenge, the Court noted that "[t]he term 'land withdrawal review program' . . . does not refer to a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations. It is simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM . . . . As the District Court explained, the 'land withdrawal review program' extends to, currently at least, '1250 or so individual classification terminations and withdrawal revocations.'" *Id.* at 890.

The Applicants, by contrast, challenge specific, final agency rules codified at 8 C.F.R. § 214.2(h)(8)(iii). The Applicants therefore contest a "final agency action" as that term is defined in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997): "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." The Registration Rules are codified and thus not "tentative" or "interlocutory." And legal consequences follow from the Registrations Rules because they alter how the Department runs the H1-B lottery and the Applicants' chances of selection in the lottery. The Department's argument fails.

7

## IV.

For all these reasons, it is hereby

**ORDERED** that the Department's [21] Motion to Dismiss is DENIED.

**SO ORDERED**.

Dated:  December 11, 2021

TREVOR N. McFADDEN
United States District Judge